IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FLOYD M. MAYES,                           Case No. 3:06-cv-6334-HU

        Petitioner,              FINDINGS AND RECOMMENDATION

    v.

JIM BARTLETT, Superintendent,

        Respondent.

NELL BROWN
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

JOHN R. KROGER
Attorney General
JONATHAN W. DIEHL
JACQUELINE SADKER KAMINS
Assistant Attorneys General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4794

    Attorneys for Respondent

HUBEL, Magistrate Judge

    Petitioner, an inmate in the custody of the Oregon Department

of Corrections, brings this habeas corpus proceeding pursuant to 28

U.S.C. § 2254.   For the reasons set forth below, petitioner's habeas petition (#2) should be denied, and this proceeding should be dismissed, with prejudice.

## **BACKGROUND**

On December 11, 1994, James Loupe was shot in the head and killed during the course of a burglary and robbery in his home. Loupe's girlfriend, Erin Conaway, and their two children witnessed the murder.  Petitioner, Victor Walking-Eagle, Frederick Knight, and Richard Hall, were indicted on charges of murder, felony murder, robbery in the first degree, burglary in the first degree, and assault in the first degree.  Prior to trial, Richard Hall and Victor Walking-Eagle accepted plea bargains.  Kevin Washington was tried separately on charges of aggravated murder.  See Washington v. Lampert, 422 F.3d 864 (9th Cir. 2005).  Petitioner and Frederick Knight were tried together.

According to the testimony at trial, Loupe's death was the result of a failed effort to rob him of drugs and money.  The robbery scheme was planned by petitioner, Walking-Eagle, Washington, Knight, and Hall.  Hall was acquainted with Loupe, having previously purchased marijuana from him.  Hall agreed to feign interest in purchasing some marijuana in order to obtain access to Loupe's home.  Hall later opened the front door, allowing petitioner, Washington, Knight, and Walking-Eagle to enter the house.  The men demanded money and drugs.  Walking-Eagle and

Washington pistol whipped Erin Conaway, and Washington shot James Loupe in the head.

Petitioner was acquitted of intentional murder, but convicted of Felony Murder (2 counts), Robbery in the First Degree, Burglary in the First Degree, and Assault in the Second Degree.  On August 20, 1996, the court imposed an upward departure sentence of 240 months on the Felony Murder convictions.  TR Aug. 20, 1996 at 1639. Grounds for the departure sentence were petitioner's tendency to engage in violent conduct, the degree of harm, and the fact that petitioner was on post-prison supervision at the time.  Id. Petitioner also received a 34-month consecutive sentence on the Assault in the Second Degree conviction.  The remaining sentences were imposed to run concurrently.  Id. at 1639-40; Resp. Exhs. 101 & 135.[1]

Petitioner filed a direct appeal alleging multiple trial court errors, including that the trial court erred when it (1) refused to grant petitioner's motion for a separate trial; (2) failed to prohibit the disqualification of black jurors without just cause; (3) allowed the hearsay statements of Victor Walking-Eagle into evidence, but did not allow impeachment through the introduction of Walking-Eagle's prior convictions; and (4) imposed an upward

---

[1] The judgment was corrected on June 14, 1999, to conform the numbering of the counts to the indictment.  Resp. Exh. 101 at 7; Exh. 137 at 2.

departure sentence.  The Oregon Court of Appeals affirmed, without opinion, and the Oregon Supreme Court denied review.  State v. Mayes, 160 Or.App. 436, 981 P.2d 401, rev. denied, 329 Or. 318 (1999).

Petitioner subsequently sought state post-conviction relief, arguing, *inter alia*, that trial counsel rendered ineffective assistance at sentencing.  The post-conviction court denied relief. The Oregon Court of Appeals affirmed, without opinion, and the Oregon Supreme Court denied review.  Mayes v. Bartlett, 207 Or.App. 320, 141 P.3d 600, rev. denied, 341 Or. 579 (2006).

On February 1, 2008, petitioner's judgment was amended to merge counts 4 and 5 (felony murder) for purposes of sentencing and conviction, and to change the gridblock for the assault conviction to reflect that the 34-month sentence was an upward departure sentence based on gridblock 8-I rather than a presumptive sentence based on gridblock 8-C.  Resp. Exh. 135 & 138 at 2.  The amendments did not alter the length of petitioner's sentence.[2]  The Oregon Court of Appeals affirmed the second amended judgment in a written opinion, and the Oregon Supreme Court denied review.  State v.

_____

[2] The second amended judgment states that "[t]o the extent the pre-sentence investigation in this case was interpreted to indicate actual juvenile adjudications as opposed to simply criminal conduct; that interpretation is in error.  Id. at 2. This language was added on petitioner's motion to ensure that conditions of his post-prison supervision would not be impacted by a mistaken belief that he had juvenile convictions.  See Resp. Exh. 136 at 20-22 & 32-33.

Mayes, 234 Or.App. 707, 229 P.3d 628, rev. denied, 348 Or. 669 (2010).

In the instant proceeding, petitioner filed a *pro se* habeas petition, alleging seven grounds for relief.  With the assistance of counsel, petitioner has narrowed those grounds to the following five:

> •Petitioner was denied due process when the trial court denied his motion to sever;
>
> •The trial court's ruling that the State had not violated the *Batson* rule by striking black juror Sterling violated the Equal Protection Clause of the Fourteenth Amendment;
>
> •Petitioner was denied the right to confront Victor Walking Eagle;
>
> •Trial Counsel was ineffective in failing to correct factual errors in the pre-sentence report; and
>
> •Petitioner's departure sentence, based upon the judge's use of his own factual findings, violated the Sixth Amendment.

Pet.'s Supporting Memo. at 21; Supp. Memo. at 1-2.[3]

## DISCUSSION

I.  **Ground for Relief One**.

Petitioner contends that the trial court violated his right to remain silent and to due process by refusing to sever his trial from that of co-defendant Knight.  Petitioner explains that Knight's testimony, in the face of petitioner's decision not to

---

[3] I construe petitioner's briefing to be an express waiver of Grounds for Relief Two and Six.

testify, impinged on petitioner's right to remain silent. Additionally, petitioner argues that Knight's testimony was highly prejudicial to petitioner, and would not have been available to the government had there been separate trials because Knight would have invoked his Fifth Amendment right to remain silent. Finally, petitioner argues that much of Knight's testimony regarding gang affiliation and activity (offered to convince the jury that Knight had no choice but to become involved in the robbery because of gang dynamics), would not have been admissible had petitioner been tried alone.

The issue of severance was raised multiple times prior to trial. The trial judge refused to sever the case, concluding that the defenses of Knight and petitioner were not mutually antagonistic. TR Sept. 26, 1995 at 419-20; TR Apr. 3, 1996 at 436 & 453-56; TR Apr. 29, 1996 at 24.

In Collins v. Runnels, the Ninth Circuit held that there is no clearly established Federal law guaranteeing trial severance when a defendant and co-defendant present mutually antagonistic defenses. 603 F.3d 1127, 1132-33 (2010). Accordingly, habeas relief is not warranted in this case because petitioner cannot demonstrate that the denial of his motion to sever was contrary to, or an unreasonable application of, clearly established Federal law. Id.; 28 U.S.C. § 2254(d)(1). Petitioner's reliance upon the Supreme Court's decision in Zafiro v. United States, 506 U.S. 534

(1993), is misplaced given the fact that the decision in that case was premised upon an analysis of Federal Rules of Criminal Procedure, *not* constitutional principles binding on state courts. Collins, 603 F.3d at 1131-33; see also Grisby v. Blodgett, 130 F.3d 365, 370 (9th Cir. 1997).

Even assuming that petitioner has a due process right to trial severance when necessary to ensure a fundamentally fair trial (see U.S. v. Lane, 474 U.S. 438, 446 n.8 (1986); Grisby, 130 F.3d at 370), petitioner has failed to demonstrate that his defense was antagonistic or mutually exclusive to that of Knight, much less that the joint trial was fundamentally unfair. Although some evidence of petitioner's gang membership was admitted, and Knight testified that petitioner participated in the burglary/robbery, Knight's testimony was cumulative of co-defendant Hall's lengthy testimony identifying petitioner as being present during the planning and commission of the burglary, robbery and murder; as well as Anna Walking-Eagle's testimony that petitioner was at her apartment, with the co-defendants, prior to the crime; Barbara Thornton's testimony that petitioner admitted to being present during the crime; and Officer Michael Crebs' testimony that, upon being arrested, petitioner stated "I didn't try to shoot anybody," "I only tried to rob the mother fucker."

In light of the substantial evidence that petitioner was involved in the burglary and robbery which resulted in the death of

James Loupe, the additional evidence that petitioner was a gang member did not render his trial fundamentally unfair. Knight's testimony had no substantial bearing on the critical question of whether petitioner participated in the robbery and burglary. Moreover, the trial judge limited any prejudice by instructing the jury that they must consider the evidence as to each defendant separately, that a defendant has the "absolute constitutional right not to testify," and that the decision not to testify cannot be considered as an indication of guilt. TR May 8, 1996 at 1481 & 1483.

For all of these reasons, petitioner has failed to demonstrate that the denial of his motion to sever resulted in prejudice great enough to render his trial fundamentally unfair. The state court's rejection of this ground is neither contrary to, nor an unreasonable application of clearly established Federal law. 28 U.S.C. § 2254(d)(1).

## II. <u>Ground for Relief Three</u>.

Petitioner contends that striking Juror Sterling violated his Fourteenth Amendment right to Equal Protection as defined in <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). Petitioner complains that the prosecutor first engaged in a suspect practice of selectively looking into the criminal backgrounds of "eight or nine" prospective jurors, including three black jurors. The prosecution then sought to strike four of the five black jurors in the venire-

first two for cause, and then three (including Ray Sterling) with peremptory challenges. Petitioner concludes that the prosecution failed to provide a persuasive race-neutral reason for striking Juror Sterling.

"[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Batson, 476 U.S. at 89; Miller-El v. Dretke, 545 U.S. 231, 238 (2005). In order to prevail on a Batson claim, a defendant must first make a prima facie showing that he is a member of a cognizable racial group and the prosecutor exercised the peremptory challenge to remove potential jurors of the defendant's race. Batson, 476 U.S. at 96-98. This first step is satisfied merely by producing evidence sufficient to *permit* the trial judge to draw an *inference* that discrimination has occurred. Johnson v. Finn, 665 F.3d 1063, 1070-71 (9th Cir. 2011).

If the defendant makes such a showing, the burden shifts to the prosecutor to come forward with a race-neutral explanation for the challenge. Batson, 476 U.S. at 96-98; Miller-El, 545 U.S. at 239. "Although the prosecutor must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible, so long as the reason is not inherently discriminatory." Rice v. Collins, 546

U.S. 333, 338 (2006) (internal quotations omitted). The court must then determine whether the defendant has established purposeful discrimination. Batson, 476 U.S. at 98; Rice, 546 U.S. at 338; Miller-El, 545 U.S. at 239; Cook v. Lamarque, 593 F.3d 810, 814 (9th Cir. 2010).

Under this three-part test, the court ultimately must determine "whether race was a substantial motivating factor-that is, whether the defendant has shown purposeful discrimination at Batson's third step." Cook, 593 F.3d at 815 (internal quotations omitted). "'If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step.'" Cook, 593 F.3d at 815 (quoting Miller-El, 545 U.S. at 241); Kesser v. Cambra, 465 F.3d 351, 360 (9th Cir. 2006).

The Batson inquiry turns largely on an evaluation of credibility. Felkner v. Jackson, 131 S.Ct. 1305, 1307 (2011). The best evidence of discriminatory intent often will be the demeanor of the prosecutor, and the race-neutral reasons for peremptory challenges often will require the trial court to evaluate whether the juror's demeanor can credibly be said to have exhibited the basis for the strike. Snyder v. Louisiana, 552 U.S. 472, 477 (2008). In the habeas context, this court defers to the state court's conclusion that the prosecutor did not engage in purposeful

discrimination unless it is an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. <u>Felker</u>, 131 S.Ct. at 1307; <u>Rice</u>, 546 U.S. at 338-39; <u>Miller-El</u>, 545 U.S. at 240; <u>Cook</u>, 593 F.3d at 816 & n.3; 28 U.S.C. § 2254(d)(2).

**A.    Underlying Facts.**

During the course of *voir dire*, white jurors Mallison, Muller, and Sullivan were removed for cause or by agreement.  TR Apr. 30, 1996 at 195-98, 263-65, 289, 300, & 307-08; TR May 1, 1996 at 31-32 & 60.  At the conclusion of *voir dire*, the prosecution moved to excuse for cause two black jurors (Yolanda Tanner and Adelaide Gonzales) on the basis that they did not fully disclose, in response to the court's questions, their prior involvement in the court system.  TR May 1, 1996 at 3-4.  The court granted the request to remove Juror Tanner (based upon her undisclosed reckless driving conviction), but denied the state's request as to Juror Gonzales (undisclosed *arrest* for possession of a controlled substance which was dismissed).  <u>Id.</u> at 8-9.

The prosecution raised preemptory challenges against Jurors Hjalmer Lofstrom, Jack Walton, and Alfred Riley.  <u>Id.</u> at 15-16. The prosecution next challenged Juror Ray Sterling, to which the defense objected on <u>Batson</u> grounds.  <u>Id.</u> at 18-19. Defense counsel argued that it had made a *prima facie* showing under <u>Batson</u> based upon the fact that Juror Sterling is black, the State's two for

cause challenges were jurors of color (Tanner and Gonzales), and Sterling's demeanor and responses demonstrated that he would be a fair and impartial juror. <u>Id.</u> 19-21.

In response, the prosecutor first noted for the record that he had moved to excuse white jurors for cause and had passed for cause a black juror, Abigail Lawrence. <u>Id.</u> at 22. Additionally, the prosecution defended his challenge to Juror Sterling as follows:

> [T]he reason why the State exercised the challenge against Mr. Sterling [is] because of his responses to neutral questions in voir dire. This is a person who repeatedly during defense voir dire uttered phrases that indicated identification with defendants in a criminal case.

> His summation about why the case was so serious, was how it would affect, quote, "these guys' lives." He was wondering, it had to be taken seriously, it could affect my destiny.

> Moreover, . . . although there were other jurors who were in the same situation, this juror has the most problems with believing the type of witness the State is going to be calling in this trial, a person who would be a convicted felon and a codefendant testifying under a plea agreement.

<u>Id.</u> at 22-23.

The trial judge rejected the <u>Batson</u> challenge, concluding that petitioner had not made a prima facie showing of discrimination and crediting the prosecution's race-neutral explanation for the strike:

> Mr. Sterling did express considerable concern about the plea deal. He and Ms. Parker expressed serious concern about that. But I am holding that at this point the defendant has not established a prima facie case of

peremptory challenge upon the basis of race, and even if
it had, Mr. Sterling did express this rather strong
opinion about a potential witness of the State, namely a
codefendant.

Id. at 23-24.

The prosecution subsequently excused Constance Newvine,
Edward Taylor, and Adelaide Gonzales. Id. at 24, 26, & 37. The
defense raised Batson challenges to both Taylor and Gonzales, which
the court rejected. Id. at 26-44.

**B.    Application of 3-Part *Batson* Test.**

As noted above, prior to the time that the prosecution raised
a peremptory challenge to Juror Sterling, three white jurors and
one black juror had been removed for cause or by agreement.
Additionally, the prosecution had unsuccessfully moved to remove a
second black juror for cause (from a panel including only five
black jurors). Assuming that these facts support a prima facie
showing of discrimination, the trial court's acceptance of the
prosecution's neutral-based reasons for challenging Juror Sterling,
and its rejection of petitioner's Batson's claim, is not an
unreasonable determination of the facts in light of the evidence
presented.

During *voir dire*, the prosecutor addressed the venire
regarding his intention of presenting the testimony of Richard
Hall, a co-defendant who had entered into a plea agreement:

    [PROSECUTOR] MR. McINTYRE: Has anyone ever
    previously encountered or heard of, read about, talked

about, the idea of a witness who is testifying in a criminal case, who actually was one of the co-defendants, who is testifying under an agreement?  Has anybody heard of that happening?

\* \* \* \* \*

MR. McINTYRE: \* \* \* Now, Ms. Parker, since you picked up on it, the question is, tell me what you think about?

MS. PARKER: Well, to me, it is very hard to evaluate whether that person is telling the truth and I don't know whether you can tell us that but it seems to me there is something about that person saying what we want to hear, or any other motives, or whatever to say.  It could go either way.  It is not necessarily what you want.

**MR. STERLING: You can't put a whole lot of credibility into it.**

MR. McINTYRE: You are concerned about credibility as to what the detail is?

**MR. STERLING: Well, yes, but.**

MS. GONZALES: It sounds like robbing Peter to pay Paul.

MR. McINTYRE: \* \* \* First of all, Mr. Sterling, are you telling me that, just because this guy was dealing, you are never going to believe anything he says?

**MR. STERLING: No, not at all.**

MR. McINTYRE: What are you going to use to decide?

**MR. STERLING: What I use in everyday life, just my natural skills I have in judging people.  I like this person; I don't like this person, you know.  He has nothing to lose so he can sit up there and say whatever he has to say and however he wants to say it.**

MR. MANNING [sic]: You think that is right now?

**MR. STERLING: I am just saying it is possible.**

* * * * *

MS. TANNER: * * * I think he might tell the truth. If I was in that position and I was going to talk, I probably would tell the truth so that I could get out.

* * * * *

MR. McINTYRE: So you could see some benefit to having a bargain with the defendant then?

**MR. STERLING: Well, I don't know.**

MR. McINTYRE: You still don't like it?

**MR. STERLING: Well, personally, I really don't care. I was just talking from a point of view –**

MR. McINTYRE: Yeah. Ms. Parker, what do you think about it now.

MS. PARKER: I think that you have to do it, you know. And I think that someone would do it from [sic] ulterior motives. The best I think would be what you said unless it is really bad. I think it is hard to know how to evaluate anybody's actions. Discretion comes into it.

* * * * *

MR. McINTYRE: * * * Would it surprise you . . . if I were to tell you that the witness who will be testifying has prior felony convictions? Would that surprise you?

* * * * *

**MR. STERLING: Well, no, it doesn't surprise me but it don't do anything for me, either.**

* * * * *

MR. STRACHAN: I think I am less comfortable with it.

MR. McINTYRE: * * * Do you think you could be fair?

MR. STRACHAN: Well, I would have to weigh that along with it.

* * * * *

MR. LINDOW: * * * I think I am, like everyone else. When you start talking about having one person rat on another one to get a conviction, and so forth, that's a tough issue, I think, for me to look at the facts presented against the people on trial, period. You can't bring anything else in, weigh it for what it is.

MR. McINTYRE: I guess part of what I am getting to is, nobody likes a tattle tale. So there is an emotional tinge to somebody who ratted out in the first place. Ms. Parker?

MS. PARKER: I don't feel what you just said. I am not like those people. I think that everybody has the responsibility and, particularly in a case like this – we are not talking about juvenile lifestyle.

* * * * *

MS. PARKER: [B]ut I hate to have to say this but someone who has committed several felonies, I might think that they weren't too truthful, also.

* * * * *

MR. JAGY: I think that the judgment of truthfulness of such a witness is going to be a lot harder than an ordinary witness, who presumably was present by chance, but it could be done. It could meet the high standard of belief.

TR Apr. 30, 1996 at 283-98 (emphasis added).

Recognizing that multiple jurors, and in particular Ms. Parker, expressed concern about the co-defendant Hall's credibility, the trial court specifically noted that Sterling had expressed *more* concern about the trustworthiness of such testimony. The totality of the record, including the portion quoted above,

supports the trial judge's assessment.  Juror Sterling vocalized his distaste for key testimony intended to be offered by the state pursuant to a plea agreement, stating that "[y]ou can't put a whole lot of credibility into it," because the witness "has nothing to lose so he can sit up there and say whatever he has to say and however he wants to say it."  Although some white jurors expressed similar concerns, the trial judge was not unreasonable in concluding that Sterling's expressed concerns were quantitatively greater.

The prosecution's concern that some jurors might be more inclined to question the credibility of a co-defendant was a clear, reasonably specific, and race-neutral explanation for the challenge given the nature of the prosecution's case.  Petitioner offers no case law to support his contention that the prosecution's explanation is pretextual, *as a matter of law*, because the law instructs jurors that they may view such testimony with skepticism. Cf. Cook, 593 F.3d at 821-22 (noting that prosecutor's concern that juror disapproved of accomplice testimony would generally be valid grounds for a strike, but concluded that justification was undermined by comparative juror analysis).

In sum, given the deference owed to the trial judge, who was present to assess the credibility of the prosecutor's statements and the jurors' demeanor during voir dire, the trial court's conclusion that petitioner failed to demonstrate purposeful

discrimination is not an unreasonable determination of the facts in light of the evidence presented, nor is it contrary to or an unreasonable application of clearly established Federal law. <u>See</u> 28 U.S.C. § 2254(d)(1) & (2); <u>Rice</u>, 546 U.S. at 342; <u>Felker</u>, 131 S.Ct. at 1307; <u>see also</u> <u>Kessler</u>, 465 F.3d at 358 (explaining that § 2254(d)(2), rather than § 2254(e)(1), applies when the court is conducting an intrinsic review of a state court process). Accordingly, habeas relief is not warranted.

## III. **Ground for Relief Four**.

Petitioner contends that the trial court violated his right to confront witnesses when it allowed Anna Walking-Eagle to testify to statements made by her brother, Victor Walking-Eagle, and then refused to allow the defense to introduce evidence of Victor Walking-Eagle's prior convictions.

The prosecution called Ms. Walking-Eagle to establish that petitioner, Knight, Hall, Washington, and Victor Walking-Eagle met at her apartment on the evening of December 11, 1994, to plan the robbery/burglary. TR May 2, 1996 at 692-99. After Ms. Walking-Eagle expressed uncertainty as to the date that the men were at her apartment, the prosecution pursued the following line of questioning:

> Q.  Ms. Walking-Eagle, let's talk about a couple things.  First of all, the particular night that we're talking about, although you don't know the date, that night does stick out in your mind, doesn't it.

A.  Excuse me?

Q.  Although you do not know the date, you have a very good memory of which night I'm speaking about, don't you.

A.  Yes.

Q.  And the reason for that is because it was a few days after that your brother, Victor, came and talked to you about what had happened that night, correct?

A.  Yes.

Q.  And what Victor had said to you at that time is he told you about what had happened at the Loupe residence, correct?

A.  No, he did not.  He told me that they went to buy some weed - -

MR. CONRY:  Objection, Your Honor, hearsay.

MR. FRINK:  No.

THE COURT:  Approach the bench. (Sidebar conference between Court and counsel, off the record.)

BY MR. McINTYRE:

Q.  What we're talking about here is these five guys come over, Victor and Kevin come back that night, and then a couple days later Victor tells you about what happened.  And you started to say, "Victor told me." What did he tell you?

A.  He told me they went to get some weed, things got out of hand and somebody got hurt.

*  *  *  *  *

Q.  Did he tell you anything about any gunshots being fired?

A.  I think he probably did.  I'm not sure.

19 -- FINDINGS AND RECOMMENDATION

Q.  Did he tell you anything about any gunshots being fired?

A.  I think he probably did.  I'm not sure.

Q.  Okay.  Do you remember him telling you something to the effect they heard a gunshot?

* * * * *

A.  I think so, yes.

* * * * *

Q.  And . . . when Victor said they went to get the weed.  Who is he referring to as "they"?

A.  All the people that were at my house.

* * * * *

Q.  And that's how you can recall the night that we're talking about relative to the five?

A.  That's correct.

TR May 2, 1996 at 712-14.

As argued by the prosecution, the foregoing testimony of Anna Walking-Eagle was not presented for its truth, but rather to refresh her recollection as to the date the defendants were at her apartment.  Hence, the testimony was not hearsay and its admission did not violate petitioner's Sixth Amendment right to confront witnesses against him.  If the statements are considered hearsay, the trial court recognized that they have an indicia of reliability because they were essentially a statement against penal interest. See May 2, 1996 TR at 717-18.  Hence, admission of the statements did not violate petitioner's constitutional right to confront

witnesses.  See Merolillo v. Yates, 663 F.3d 444, 454 (9th Cir. 2011) (admission of hearsay statement at trial violates Confrontation Clause *unless the statement has adequate indicia of reliability*).

Finally, admission of the statements was harmless error given the fact that petitioner cannot demonstrate that they had a substantial and injurious effect or influence in determining the jury's verdict given the strong evidence presented by the prosecution, including the testimony of Richard Hall, implicating petitioner in the crime; Barbara Thornton's testimony that petitioner admitted to being present during the crime; and Officer Crebs' testimony that, upon being arrested, petitioner stated "I didn't try to shoot anybody," "I only tried to rob the mother fucker."  See Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993) (addressing harmless error); Merolillo, 663 F.3d at 455 (same). For all of these reasons, the state court's rejection of this ground for relief is neither contrary to, nor an unreasonable application of, clearly established Federal law.

**IV.  Ground for Relief Five**.

Petitioner contends that trial counsel was ineffective for failing to subpoena juvenile courts records to refute inaccurate criminal history statements in his Presentence Report, relied upon by the sentencing court to impose an upward departure sentence.

The Supreme Court has recently clarified that a defendant has a right to effective assistance of counsel during sentencing in both capital and non-capital cases. Lafler v. Cooper, 2012 WL 932019 *6 (Mar. 21, 2012). "Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in Strickland prejudice because any amount of [additional] jail time has Sixth Amendment significance." Id. (internal quotations omitted).

A claim of ineffective assistance of counsel, requires petitioner to prove that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at *5; Bell v. Cone, 535 U.S. 685, 695 (2002); Strickland v. Washington, 466 U.S. 668, 687-88 (1987).

In the instant proceeding, the trial record demonstrates that defense counsel clearly advised the sentencing judge, orally and by written motion, that petitioner did not have any juvenile adjudications. TR Aug. 20, 1996 at 1628 & 1640-41; Resp. Exh. 103 at App. 61-67. Moreover, while the presentence report listed the juvenile incidents under the category "Juvenile Adjudications," it was clarified later in the report that the information concerning the events was premised on police reports and did not involve

judicial adjudications.  Resp. Exh. 12 at 3-6; <u>see also</u> Resp. Exh.
119 at ¶ 6.

Further, there is no indication in the state record that the
sentencing judge misunderstood petitioner's juvenile history.  The
sentencing judge's imposition of a departure sentence was premised
upon the degree of harm, the fact that petitioner was on post-
prison supervision at the time of the incident, and petitioner's
tendency to engage in violent conduct (which included numerous
juvenile and adult incidents contained in police records (<u>see</u> Resp.
Exh. 112 at 3 & 7-9), as well as petitioner's adult convictions for
Robbery in the Second Degree, and Felon in Possession of a
Firearm):

> I realize that no matter what I do here, it is not
> going to bring Mr. Loupe back.  Mr. Loupe was not a model
> citizen, there was evidence that he was a minor drug
> dealer, minor, but he was a human being, and he was
> entitled to live, and no one had the right to take his
> life away from him.

> * * * * *

> I guess the thing that is the most impressive, sadly
> impressive, terribly impressive about this case is that
> a man was killed in front of his children underneath a
> Christmas tree.  That is the thing that is very, very
> difficult to overcome here.

> One of the people that spoke for Mr. Mayes asked me
> not to look at Mr. Mayes as just another case.  It is
> not.  A crime of this magnitude rivets - - any judge who
> is half conscious, rivets his or her attention very much
> because justice is a very, very difficult thing to
> achieve.

> * * * * *

23 -- FINDINGS AND RECOMMENDATION

One of the things that was mentioned in the presence report is Mr. Mayes not only not just his record, but his tendency in the past for violence, for malevolence, and it was there. There are some things in his background that are kind of hard to overlook.

* * * * *

On the Felony Murder count, Count 2, I am going to make a finding that this is in grid block 11-C. I'm going to do an upward duration departure to 240 months with three years post-prison supervision.

Grounds for the departure and the aggravating factors are the defendant's tendency to engage in violent conduct, the degree of harm in this case, and I have to agree with Mr. Manning, you can't do more to a man than kill him, but the fact that he was in his house in front of his children in front of his wife make it very difficult, although he was not the shooter, and also that he was on post-prison supervision at the time.

TR Aug. 20, 1996 at 1637-39.

Based on the foregoing record, petitioner has failed to demonstrate that trial counsel was deficient in failing to subpoena petitioner's juvenile records to further support his clarification of the presentence report, or that petitioner suffered prejudice as a result. The post-conviction court's rejection of this claim is neither contrary to, nor an unreasonable application of clearly established Federal law. Additionally, it is not premised upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) & (2).

**V.   <u>Ground for Relief Seven</u>.**

Respondent contends that petitioner's Ground for Relief Seven (a <u>Blakely</u> challenge to petitioner's upward departure sentence) is

procedurally defaulted because it was not raised at trial or on direct appeal. Respondent further argues that *if* the claim was appropriate to present in the state post-conviction proceeding, it nevertheless was raised in a procedural context in which it would not be considered because it was raised by petitioner in a Motion for Relief from the post-conviction court's judgment. Additionally, respondent argues that the claim fails on the merits.

Because it is well settled that the decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), does not apply retroactively on collateral review, habeas relief is not warranted as to this claim. <u>See</u> <u>Schardt v. Payne</u>, 414 F.3d 1025, 1036-37 (9th Cir. 2005); <u>see also</u> 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits notwithstanding failure to exhaust state remedies).

## CONCLUSION

Based on the foregoing, petitioner's habeas corpus petition (#2) should be denied, and this proceeding should be dismissed, with prejudice. Because petitioner has made a substantial showing of the denial of a constitutional right as to ground for relief four, a certificate of appealability should be granted on the sole issue of whether the trial court violated petitioner's right to confront witnesses when it allowed Anna Walking-Eagle to testify to statements made by Victor Walking-Eagle.

///

///

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due May 1, 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due May 18, 2012. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 13th day of April, 2012.

/s/ Dennis J. Hubel

_____
Dennis J. Hubel
United States Magistrate Judge